JOHN M. PETERSON *v.* MARGARET BRAY ET AL.

BROWN, C. J., JENNINGS, INGLIS and O'SULLIVAN, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued June 12—decided August 14, 1951

*Frederick L. Comley,* with whom was *Huntley Stone,* for the appellants (defendants).

*Leo Nevas,* with whom, on the brief, were *Morris Robinson* and *Howard Benedict,* for the appellee (plaintiff).

JENNINGS, J.   This was a suit for specific performance of an alleged agreement to convey lot 18 in Sasqua Hills development in East Norwalk to the plaintiff. The defendants, Margret (also spelled Margaret) Bray and Christina Till are sisters.   During most of the time covered by these transactions, Christina was detained in Germany because of the war and Margret managed the property as her agent.   When Christina returned in 1946 she went to live with her sister.

The following facts are not disputed.   On January

14, 1936, Margret deeded lot 18 to Christina by warranty deed. Margret constructed a stone house on the lot which has been known as the "Bray Stone House." Christina had advanced $2000 toward the purchase price of the lot in 1935 and $500 toward the cost of the foundation. Margret was having financial difficulties and she had title put in the name of her sister for her own convenience and to avoid creditors. Except in 1937, when Margret leased the property as attorney for Christina, she has leased it as her own and has had exclusive control, management and supervision of it. Christina authorized Margret to lease the premises and to give options for its purchase.

The plaintiff leased the property from Margret on August 21, 1943, for one year from October 1, 1943. It was described as "her stone residence and grounds at Sasqua Hills, East Norwalk, Connecticut." The lease contained a renewal and a first refusal clause. It was renewed October 1, 1944. On February 20, 1945, Margret wrote, signed and delivered a letter to the plaintiff which read as follows: "This is to notify you that I have received an offer for the purchase of the property you have leased from me and are now occupying. In accordance with the terms of your lease I am hereby giving you the three days notice provided therein, the time of which expires Friday night, February 23, 1945. The offer I have received and will accept is $20.000." The plaintiff called Margret and agreed to purchase the property at the price offered. On February 21, the plaintiff first learned that the property stood in the name of Christina. When he told this to Margret, she told him not to be concerned, because an attorney had power to sell and she would make all the necessary arrangements. Pursuant to this conversation, the plaintiff wrote Margret as follows: "I will take the property in accordance with the option as outlined

in the lease at the price you have been offered and pay 10% of the purchase price (to be placed in escrow) on the delivery of a contract in the usual form, and the balance on the delivery of a clear and marketable deed which will be delivered in 60 or 90 days as you prefer, but not later than July 1st, 1945." The attorney who held the power to sell refused to exercise it because he did not know whether Christina was alive. She finally returned in October, 1946. In May, 1946, Margret had demanded $27,000 of the plaintiff as the price of the house. The plaintiff refused to buy at this price and brought this suit by writ filed November 27, 1946. He has had funds with which to purchase the property available at all times since February 20, 1945. Margret and Christina have failed and refused to convey it to him at the agreed price.

The defendants are entitled to have added to the finding the fact that the plaintiff claimed no land north of the stone wall which marked the northerly boundary of the property.

On these facts the court concluded that Christina was a mere "dummy," that Margret was the equitable and real owner of the lot in question and that she "was fully authorized to bind Christina Till as well as herself to a lease and a sale of the premises." It also concluded that "Bray's stone house at Sasqua Hills designated the property known as Lot No. 18."

The defendants first claim that there was no sufficient memorandum to satisfy the Statute of Frauds. The letter offering the property to the plaintiff, his lease, his occupation of the property, the fact that the house on lot 18 was known as the Bray Stone House, and the admission in the answer of the full description thereof in the first paragraph of the complaint, in combination, adequately describe the property. "The description is sufficiently definite whenever it is reasonably cer-

tain from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written." *McMahon* v. *Plumb*, 88 Conn. 547, 552, 92 A. 113. A question about the north boundary will be discussed later.

The defendants next claim that Margret was not the equitable and real owner and that since judgment was on the first count, which alleged this fact, it could not be supported. It is unnecessary to analyze their arguments in detail. It is not disputed that the whole title, by whatever name called, was in both defendants. The judgment found the "issues," that is, the issues on both counts, for the plaintiff. Practice Book § 189. The "defendants," that is, Christina and Margret, were ordered to convey. The rights as between the latter do not require further exploration. This conclusion also disposes of the defendants' claim that the two counts are inconsistent because the first describes Margret as the equitable owner and the second as the agent of Christina. Both are parties defendant and, as stated above, such rights as both have to the property add up to the whole title.

The final claim of law of the defendants is that Margret was never authorized by Christina to execute a contract of sale of the premises. The short answer to this appears in the findings, not attacked, that Christina authorized Margret "to mortgage" the premises "and generally to do anything with respect thereto that the principal could," and also "to lease the said premises and to give options for the purchase of the same." This claim of the defendants is without merit.

The examination of the evidence made necessary by the attacks on the finding establishes beyond question that it was the claim of all the parties that the north boundary of the lot was marked by a stone wall.

The location of the stone wall on the map used by the witnesses is less certain. The two lines, one of which marks the north boundary, inclose a triangular piece of land bounding 5 feet on the west (the highway) and 46.06 feet on the east. While the finding by the trial court that the wall is on the more northerly of the two lines on the map might be technically supported, the plaintiff, under the judgment, would be getting more land than he claimed, if, as seems almost certain, the stone wall is on the more southerly line. It is no injustice to the plaintiff to require him to accept a modified form of relief. See Pomeroy, Specific Performance (3d Ed.) § 41, citing *Willard* v. *Tayloe,* 8 Wall. (75 U. S.) 557, 565, 19 L. Ed. 501. This is an equitable action and, in the interests of justice, the case is remanded for the sole purpose of fixing the northerly boundary of the land ordered conveyed as the stone wall, in accordance with the claims of all parties.

There is error, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the northerly boundary of the land ordered conveyed should be described as the stone wall running easterly from the highway.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.