[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by plaintiff Levesque Builders Inc., ("Levesque") against defendant Cadwell Hoerle for specific performance and damages in connection with the purchase and sale of certain real property located in New Hartford, Connecticut. The complaint dated August 17, 1994 was brought in four counts. The first count seeks specific performance for breach of contract. The second count seeks money damages for breach of contract. The third count alleges fraudulent or negligent representations. The fourth count alleges a violation of CUTPA. (General Statutes §42-110b et seq.).
Along with his amended answer dated February 24, 1995 defendant has filed a special defense in which he claims that the contract between the parties is unenforceable because it fails to comply with General Statutes § 52-550. He also has filed two counterclaims. In count one he alleges that the present action was brought by the plaintiff without probable cause and with malicious intent to unjustly vex the defendant. In count two he alleges a violation of CUTPA.
A trial to the court was held for six days during the period June 6 through July 6, 1996. The court, finds the following facts.
In late 1990 defendant's son informed Jean Levesque that his father wanted to subdivide as well as to sell off some of his land in New Hartford. Levesque suggested that they set up an appointment. In April of 1991 Levesque met at the site CT Page 8580 with the defendant and defendant's real estate agent, Mrs. Braddock. At that time defendant offered to sell to Levesque 60 acres, but Levesque was not interested in buying that many acres. A second meeting was held later, at which time defendant offered to sell Levesque two approved building lots plus 36 acres. Levesque said he was interested and he told defendant to put a contract together and give him a map.
In late May of 1991 a contract was signed by the parties. (Ex. 1). The contract provided that defendant would sell and plaintiff would purchase 36 ± acres located at Sabolcik Road (rear) and two approved building lots shown as 7 and 13 on a preliminary map by Whitney Associates dated Sept. 1990, New Hartford. The purchase price was $110,000 for the 36 ± acres and the two lots. The agreement was subject to a number of conditions as follows:
 "1) Approval by the Town of New Hartford of the first phase of Subdivision belonging to seller and consisting of ± lots.
 2) Acceptance of to the road, by the Town of New Hartford, in the first phase as described above, seller to complete said road of 1,200 ± feet and any other improvements required by the town to Sabolcik Rd.
 3) Legal access to be left at end of completed new road for 36 ± acres adjoining it.
 4) Closing to take place within 60 days of sellers obtaining acceptance of completed road as mentioned above.
 5) Seller to allow buyer onto property with machines etc. for the purpose of perc, deep hole testing, surveying, and misc, prior to closing.
 6) Purchaser to deed over to seller a strip of land, 50' min. to allow access for road to adjoining property (171 ± acres off Timberline Rd). Purchaser also agrees to proceed with diligence and to complete, according to town standards, a road through to aforementioned adjoining property of seller, within 2 yrs from transfer of title of CT Page 8581 this land as stated in this agreement."
Upon receiving the map Levesque went to the site with Mrs. Braddock, who showed him on the map the two lots as well as the 36 ± acres he was to receive. He was told that the 36 ± acres included everything located to the right of the dark red line located on said map. Mr. Levesque gave defendant a deposit of $1,000 toward the purchase of the property specified in said contract.
In 1992 defendant sought subdivision approval for phase one and proceeded to build the road (see conditions 2, 3, 4 in contract).
In January 1993 Mr. Levesque, with permission of the defendant, arranged for the sale of lot 7 to Mike Carlone, and defendant was paid $45,000, thus reducing what the plaintiff owed to the defendant to $64,000 for purchase of lot 13 and the 36 ± acres. (Lot 13 on Exhibit 2 had become lot 7. Lot on said exhibit had become lot 6. Thus lot 6 and the 36 ± acres were still left to be purchased for $64,000). By January of 1993 the road to be built by the defendant had been installed, but had not yet been accepted by the town of New Hartford although it was accepted at a later time.
In February of 1993 Mrs. Braddok asked Mr. Levesque to sign a second contract. She told him it contained only minor changes and that he was requested to enter into the new contract because one lot had been sold. The contract provided for the sale of the remaining unsold building lot (now known as lot #6) and 36 ± acres open land at end of finished road (Hidden Hill Rd) drawn by Empire Associates Dave Whitney dated June 1991. The contract provided for a purchase price of $65,000 less the down payment of $1,000 for a total of $64,000. (Exhibit 3). Although the second contract referred to a map, the map reference is not the same reference found in the original contract (Exhibit 2), and Mr. Levesque was never given a copy of the 1991 map. At trial it appeared that such map is non-existent. When he signed the second contract the subject of the 36 ± acres was not discussed and thus Mr. Levesque assumed he would be purchasing the same 36 ± acres referred to in Exhibit 2.
The following conditions were added to the second contract and were not objected to by Mr. Levesque: CT Page 8582
 "1) This agreement superceeds (sic) previous agreement between Cadwell Hoerle and John R. Levesque D.B.A. Levesque Builders Inc.
 2) In the event that a C.O. cannot be issued due to delays in installation of power on Hidden Hill Rd. phase #1 closing can be delayed until power is in and a C.O. capable of issuance. At this point buyer will have 5 business days to close on property
 3) Purchaser to deed over to seller a strip of land 50' minimum to allow access for a road to adjoining property (171 ± acres off Timberline Drive). Purchaser also agrees to proceed with diligence complete, according to town standards, a road through to the aforementioned adjoining property of seller within 2 yrs from transfer of title of this land as stated in this agreement. In the event, the road is not completed within the allotted 2 yrs this land will revert in ownership, back to the seller, with the seller retaining first position on this land until road is completed and accepted by the town of New Hartford. This agreement is
 4) Subject to sellers atty. review and redefinition of terminology within.
 5) Seller retains the right for a rear lot and/or the buyer will afford the seller the rear lot on adjoining property of the seller."
In the spring of 1993 plaintiff purchased lot #6 referred to in the second contract for $35,000. Thus he then owed $29,000 for the 36 ± acres.
In September of 1993 Mr. Levesque purchased a third lot (#8) from the defendant. At that time he was told by Mrs. Braddock that he would be able to close on the 36 ± acres around December 1993. Defendant himself testified at trial that in January 1994 he was still ready to sell said 36 ± acres to Levesque. CT Page 8583
By December 1993 Mr. Levesque was ready, willing and able to purchase the 36 ± acres. However, in January 1994 he discovered that defendant did not intend to close at the agreed upon price. (Exhibit D). In January he learned that as early as Spring of 1993 defendant had in fact started to subdivide the 36 ± acres. Furthermore, he learned that defendant was saying that there was an ambiguity in the description of the property. Thus, the defendant made it clear in 1994 that he did not intend to convey the property to plaintiff.
In April of 1994 the defendant gave a mortgage on property which contained the 36 ± acres to Shawmut Bank. (Plaintiff's Ex. 13). At the time of trial that mortgage was under foreclosure.
There is no question that the parties agreed that the plaintiff would purchase and the defendant would sell to him two lots plus 36 ± acres for the sum of $110,000 and that the plaintiff did in fact pay to defendant a down payment of $1,000, plus $80,000 for the two lots. There is no question either that the defendant has refused to sell the 36 ± acres to the plaintiff. He claims that the 36 ± acres was not described with specificity and that the contract was unenforceable because it does not comply with General Statutes § 52-550, i.e. the Statute of Frauds. Said statute provides:
 "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . ."
Clearly there were two agreements in writing. (Plaintiff's Exhibits 1 and 3). Also there was a map reference in the first contract which the plaintiff was entitled to rely on inasmuch as the second contract referred to a non-existent map.
In a recent Appellate Court decision it was held that "`[t]he statute of frauds would not be violated because the description of land contained in a contract of sale or any CT Page 8584 option to purchase is sufficiently definite to satisfy the requirements of the Statute of Frauds `whenever it is reasonably certain from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written.'" Foley v. Huntington Co., 42 Conn. App. 712, 735
(1996) (citations omitted).
The court holds in this case that the statute of frauds has not been violated. A description of the 36 ± acres has been made sufficiently definite through reference to the two contracts, the map attached to the first contract, other maps and descriptions. plus the testimony placed in evidence at trial.
"The statute of frauds was not violated because a written contract to sell land existed, and the evidence admitted was used properly to discern the intent of the parties." Foley v.Huntington Co., supra at page 736. In any event, the court further notes that even if there had not been an agreement in writing, there was part performance or the part of the plaintiff. Ubysz v. DiPietro, 185 Conn. 47, 55 (1981).
The court has studied the following evidence admitted at trial to determine the definiteness of the agreement of the parties.
Plaintiff's Exhibit 1 states that defendant contracted to convey to plaintiff 36 ± acres Sabolcik Road (rear) and 2 approved building lots shown as 7 and 13 on preliminary map prepared by Whitney Associates dated Sept. 1990 New Hartford. The contract price was $110,000.
Plaintiff's Exhibit 2 is the map prepared on behalf of defendant and referred to in said first contract. It was provided to the plaintiff when he signed the contract. The map shows the two building lots (7 and 13) mentioned in the contract as well as the location of the 36 ± acres. At the time he drafted the first contract (Ex. 1) defendant did not believe there was any ambiguity as far as the acreage was concerned. (Transcript of defendant, pg. 20, June 11, 1996). Plaintiff was taken to the site and shown exactly where the 36 ± acres were located on the said map.
Plaintiff's Ex. 3 is the second contract which refers to CT Page 8585 a non-existent map. At the time when that contract was signed defendant still intended to sell to the plaintiff 36 ± acres and the remaining lot referred to in the first contract Zone lot having been sold). Exhibit 3 refers to lot #6. There was testimony that lot #7 referred to on Exhibit 2 had now been re-numbered as lot #6. In light of the fact that the second contract referred to a now non-existent map, Mr. Levesque rightly assumed that lot #6 together with the 36 ± acres were the same as those located on Exhibit 2. Furthermore, he had been told by defendant's agent that the second contract contained only minor changes to reflect the fact that one of the two lots referred to in the first contract had been sold.
Plaintiff's Exhibit 4 is a map dated May 1993 prepared for the defendant. It shows the same location of the 36 ± acres shown on Exhibit 2. Although there are some boundary changes between the two maps, those changes were made by the defendant without consulting the plaintiff. Thus the defendant had encroached upon the parcel that he had contracted to sell to the plaintiff. (Transcript of Defendant at Page 22).
Plaintiff's Exhibit 5 is a map prepared for the defendant in March of 1994. It also shows the same location of the 36 ± acres which are found on Exhibit 2.
Defendant's Exhibit B contains a description of the 36 ± acres that the defendant testified he was going to convey to Levesque. It was prepared by the attorney for the defendant (Transcript of Defendant at Page 30).
Plaintiff's Exhibit 11 shows a tracing of Exhibits 2, 4, 5. The tracing indicates that the 36 ± acres is in the same location on all three maps.
Plaintiff's Exhibit 12 contains an A-2 survey prepared for the defendant in March of 1994. It contains detailed measurements of property to be subdivided in defendant's proposed phase III subdivision. The survey contains the 36 ± acres located on Exhibit 2.
Defendant's Exhibit G prepared for defendant also shows the same location of the 36 ± acres found on Exhibit 2. The defendant at trial was asked whether at the time of the second contract (Ex. 3) the 36 ± acre parcel was CT Page 8586 essentially the same parcel as it was in May of 1991. He said "[i]t could be eighty percent, yes." At the time of the second contract the defendant did not tell the plaintiff that the 36 ± acre parcel that he promised to sell him in May of 1991 was no longer the same parcel. (Transcript of Defendant, Page 83).
At trial the defendant testified that he was willing to sell the 36 ± acres to the plaintiff at least as late as January of 1994. Yet he had been in the process of getting subdivision approval of this parcel since April of 1993.
Plaintiff's Exhibit 13 shows that in April of 1994 defendant gave a mortgage on the property to the Shawmut Bank. The description of the property is the same as found on Defendant's Ex. B. The property described in these two exhibits includes the 36 ± acres which are the subject of this suit.
Plaintiff's Ex. 8 shows that the property which contains the 36 ± acres is being foreclosed.
Defendants Exhibits M and T both show the location of the property where the 36 ± acres are located.
In summary the court finds that the parties agreed in writing that the defendant would sell to the plaintiff two lots plus 36 ± acres of land for $110,000, and that the location of the two lots and 36 ± acres was shown to the plaintiff in person. Furthermore, plaintiff was given a map showing said property (Exhibit 2.). Plaintiff partly performed the contract by purchasing the two lots. He has paid $81,000.
Defendant claims there is no accurate description of the property and gives this reason for failing to sell the 36 ± acres to the plaintiff. While the parties may not agree to an exact description of the property it is apparent that they both knew where the property was and that they both agreed that Levesque was to receive 36 ± acres at that location. The defendant could have and in fact did commission a survey in order to determine an exact description.
The court further notes that shortly after the second contract was signed, the defendant proceeded to subdivide the CT Page 8587 subject parcel. This process continued even while his attorney was discussing details of a closings with plaintiff's attorney. It is apparent that the defendant had no intention of selling the property to the plaintiff.
The court finds that the plaintiff has prevailed in his claims under counts 1, 2 and 4.
Under count 1 he seeks specific performance. However, the court sees no useful purpose in awarding specific performance since the defendant has seen fit to put a mortgage on the property which is now under foreclosure.
Under count 2, the court finds that plaintiff is entitled to the value of the property as appraised by plaintiff's appraiser ($180,000) less $29,000 which is still owing under the contracts of the parties.
Under count 4, the court finds that plaintiff has violated section 42-110b et seq. by encroaching on the property subject to the first contract, by referring to a nonexistent map in the second contract, by proceeding to subdivide the property when he knew he had contracted to sell it to the plaintiff, and by placing a mortgage on the property
Accordingly, judgment may enter for plaintiff in the amount of $151,000, plus an attorneys fee of $2,500 for violation of CUTPA), for a total of $153,500, plus costs.
Judgment may enter for the plaintiff on the defendant's counterclaims.
Allen, State Judge Referee