MICHAEL GIAMETTI ET AL. *v.* INSPECTIONS,
INC., ET AL.
(AC 23059)

Lavery, C. J., Schaller and Peters, Js.

Argued February 11—officially released April 22, 2003

*Alphonse Balzano, Jr.,* for the appellant (defendant Laura L. Zacks).

*Carl E. Secola, Jr.,* for the appellee (named plaintiff).

*Opinion*

PETERS, J. Under General Statutes § 20-327b,[1] vendors and purchasers of residential property must exe-

---

[1] General Statutes § 20-327b (a) provides in relevant part: "[E]ach person who offers residential property in the state for sale . . . shall provide a written residential condition report to the prospective purchaser at any time prior to the prospective purchaser's execution of any binder, contract to purchase, option, or lease containing a purchase option. A photocopy, duplicate original, facsimile transmission, or other exact reproduction or duplicate of the written residential condition report containing the prospective purchaser's written receipt shall be attached to any written offer, binder or contract to purchase. A photocopy, duplicate original, facsimile transmission or other exact reproduction or duplicate of the written residential condition report containing the signatures of both seller and purchaser, shall be attached to any agreement to purchase the property."

cute a residential property condition disclosure report (§ 20-327b report) documenting the vendor's actual knowledge of the condition of the property. This case concerns the relationship between this statute and the common-law tort of negligent misrepresentation. Specifically, it concerns the actionability of such a common-law claim in light of an independent professional inspection obtained by the purchaser of the property. The trial court concluded that a vendor is liable for damages for negligent misrepresentation although that vendor urged the purchaser to hire a professional inspector and such an inspection uncovered no infestation. We reverse the judgment of the court in favor of the purchaser and direct the entry of judgment for the vendor.

On April 27, 2000, the plaintiffs, Michael Giametti and Elizabeth Giametti, filed their initial complaint against the defendant Laura L. Zacks for having misrepresented the condition of residential property that she had conveyed to them.[2] The alleged misrepresentation concerned a carpenter ant infestation in this house. In a subsequent amended complaint, the plaintiff Michael Giametti[3] specified that the defendant was liable for fraudulent misrepresentation (count five), fraudulent nondisclosure (count six) and negligent misrepresentation (count seven). The plaintiff sought damages for the costs of removing the infestation and repairing associated property damages, as well as punitive damages for knowing and intentional misrepresentation.

In response, the defendant denied the plaintiff's allegations and asserted two special defenses. The first special defense alleged that the defendant's representa-

---

[2] The plaintiffs' complaint also named Inspections, Inc., as a defendant. The named plaintiff and Inspections, Inc., however, reached a settlement prior to trial. We refer in this opinion to Laura L. Zacks as the defendant.

[3] On October 27, 2000, Elizabeth Giametti withdrew from the action as a plaintiff. We refer in this opinion to Michael Giametti as the plaintiff.

tions did not constitute a warranty because of compliance with the requirements of the § 20-327b report. The second special defense alleged that the defendant was not liable because the plaintiff had signed the § 20-327b report and, in accordance with the statutory recommendation, had obtained a clean professional inspection report of the house.

On April 24, 2002, the trial court rendered judgment. The court first found, for the defendant, that she had no actual knowledge of the infestation at the time she signed the § 20-327b report and that she had not fraudulently misrepresented the condition of her property. It further found, for the plaintiff, that the defendant, in the § 20-327b report, had negligently misrepresented that the property was not infested with ants. The court awarded the plaintiff $4600 for the cost of repairs and treatment of the house. The defendant appeals from the judgment in favor of the plaintiff.

The record discloses the following facts. In 1998, the plaintiff and the defendant negotiated the sale of a house located at 8 Wood Terrace in East Haven. The defendant had lived there for approximately a decade prior to the conveyance to the plaintiff. On March 2, 1998, the parties executed a § 20-327b report wherein the defendant indicated that, to the best of her knowledge, the house was not subject to any kind of infestation. On March 12, 1998, the parties executed the contract of sale and transferred title to the plaintiff at a closing in May. At the defendant's urging, the plaintiff hired a professional inspector, Inspections, Inc., to inspect the dwelling as required by the contract of sale. The inspector did not discover any infestation.

Shortly after taking possession, the plaintiff discovered ants throughout the dwelling. He hired Keith Bode, an exterminator, to treat the house for a possible infestation. As a result, the plaintiff discovered that their

kitchen floor was damaged by carpenter ant nests and water damage. The plaintiff had the kitchen floor replaced for $4400. The house was then treated with pesticides for $200.

In the trial court's memorandum of decision, it found that the defendant had negligently misrepresented the condition of her property in her § 20-327b report. It based this finding on the credibility of the testimony given by Bode.[4] Contrary to the assertion in the plaintiff's brief, the court did not find that the defendant had misrepresented the condition of the house prior to her execution of the § 20-327b report. It made no mention of the inspection conducted by the plaintiff's inspector. It made no explicit finding with respect to the plaintiff's reliance on the defendant's negligent misrepresentation.

On appeal, the defendant challenges both the factual findings and the legal conclusions of the court. Although the defendant does not articulate the basis for her appeal as clearly as she might have, we construe her claimed errors as follows: (1) the court made improper factual findings of negligent misrepresentation, and (2) the plaintiff could not prevail, as a matter of law, without establishing his reliance on her misrepresentations. The plaintiff urges affirmance of the trial court's judgment in his favor.

Our standard of review of challenges to the court's findings of fact and legal conclusions is well established. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find sup-

---

[4] Bode testified that the defendant should have noticed ants throughout the home because of the size of the nests and of the ants themselves.

port in the facts that appear in the record." (Internal quotation marks omitted.) *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 344, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

## I

The trial court found that the defendant did not intentionally make any misleading statements or withhold information regarding the condition of the house when she executed the § 20-327b report. In making this determination, the court explained why the defendant was not liable under the common-law theories of fraudulent misrepresentation and nondisclosure, but did not address § 20-327b itself. Nonetheless, it found that the defendant had made a negligent misrepresentation in the § 20-327b report when she indicated therein that the dwelling was "free of termites, insects, rodents and infestation problems."

We, therefore, must first address what cause of action the plaintiff had under § 20-327b. We hold that the plaintiff could have sought relief under this statute only for a *knowing* misrepresentation in the statutory report.

The interpretation of a statute is a question of law. *State* v. *Russo*, 259 Conn. 436, 447, 790 A.2d 1132 (2002), cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002). Our Supreme Court recently clarified the process of statutory interpretation in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003) (en banc). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute

itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be the meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; internal quotation marks omitted.) Id., 577–78.

Our legislature enacted § 20-327b, otherwise known as the Uniform Property Condition Disclosure Act, to reduce the risk of miscommunication regarding residential property between a vendor and a prospective purchaser. The statute requires a vendor of such property to provide "a written residential condition report to the

prospective purchaser at any time prior to the prospective purchaser's execution of any binder [or] contract to purchase . . . ." General Statutes § 20-327b (a). Such a report must include a provision informing the purchaser that any representation made by the vendor in the § 20-327b report is limited to the vendor's *actual knowledge.* General Statutes § 20-327b (d) (2) (A). The statute requires every report to include a provision that encourages the potential purchaser to have the property inspected by a professional inspector. General Statutes § 20-327b (d) (2) (B). Furthermore, the § 20-327b report must inform the purchaser that any representation made by the vendor does not constitute a warranty by the vendor. General Statutes § 20-327b (d) (2) (D).

At the same time that the legislature enacted this statute, it also enacted §§ 20-327d[5] and 20-327e.[6] These statutes underscore the legislature's intent with respect to statements in a § 20-327b report. Section 20-327d provides that § 20-327b does not create any new express or implied warranties by the vendor. It states that a vendor is not required to obtain a preconveyance inspection or a test with respect to the physical condition of the property. Moreover, § 20-327e reiterates that the representations made by the vendor are limited to information about which the vendor has actual knowledge.[7]

---

[5] General Statutes § 20-327d provides: "No provision of section 20-327b or 20-327c: (1) Shall be construed to create any new implied or express warranties on behalf of the seller of the property; or (2) shall be construed to require the seller of the property to secure inspections, tests or other methods of determining the physical conditions of the property."

[6] General Statutes § 20-327e provides: "The representations made by the seller pursuant to section 20-327b or 20-327c shall be construed only to extend to the seller's actual knowledge of the property and no constructive knowledge shall be imputed to the seller."

[7] The regulations accompanying § 20-327b do not further illuminate the scope of the report. Rather, the regulations focus on the responsibilities of a licensed real estate agent or broker to avoid fraudulent misrepresentations or concealments. See Regs., Conn. State Agencies § 20-328-5a.

The legislative history of § 20-327b reinforces the conclusion that the information to be disclosed is limited to representations of fact about which the vendor has actual knowledge. Representative Mary V. Eberle stated that "[t]his bill will help to resolve many problems of miscommunications which frequently complicate and sometimes prevent residential closings from going forward by making it clear what a seller has disclosed to the buyer about the property." 38 H.R. Proc., Pt. 19, 1995 Sess., p. 6966. Representative Michael C. Fedele also explained that "this bill will resolve some of the communication issues that occur between a seller and a buyer and hopefully, loss of litigation occurs there . . . ." Id., p. 6969. Additionally, Senator Louis C. DeLuca stated that a § 20-327b report "would be related to the seller's actual knowledge of the property only." 38 S. Proc., Pt. 16, 1995 Sess., p. 5893.

In sum, the function of a § 20-327b report is to diminish the risk of litigation by facilitating meaningful communications between a vendor and a prospective purchaser. It does not, however, require a vendor to assume the role of warrantor of conditions of which the vendor was in fact unaware.

The trial court properly concluded, therefore, that the defendant in this case had no statutory liability under § 20-327b. This result follows from the court's finding that she had no actual knowledge of any ant infestation.

## II

The trial court also determined, however, that the defendant was liable for having made a negligent misrepresentation on the § 20-327b report. We turn now to the propriety of the court's conclusion that the defendant should have discovered and disclosed that her house was infested with ants before she signed the § 20-327b report.

Our inquiry requires us to answer three questions. First, does § 20-327b govern claims of negligent misrepresentation? Second, does the statute preclude such actions? Third, is the court's conclusion consistent with the common law of negligent misrepresentation and supported by the record? In our view, the answer to all three questions is "no."

A

We briefly address the question of whether § 20-327b governs negligent misrepresentation actions. The statute, on its face, does not govern such actions. Additionally, the legislative history demonstrates the legislature's intent not to use the statute as a basis for recovery against vendors who negligently misrepresent the condition of a residential property. Representative Eberle explained that the statute "makes clear that the [§ 20-327b] report represents only the seller's actual knowledge of the property and does not form the basis for any claim of constructive knowledge on the seller's part." 38 H.R. Proc., supra, p. 6963. The plaintiffs have not cited authority to the contrary. Accordingly, we hold that § 20-327b does not govern negligent misrepresentation actions.

B

We turn next to the question of whether § 20-327b precludes common-law actions for negligent misrepresentation. The text of the statute and the statute's legislative history require the conclusion that the legislature did not intend to preclude preexisting common-law actions for negligent misrepresentation.

The statutory scheme contains no language to suggest that § 20-327b was intended to provide the exclusive remedy that a disappointed purchaser of residential property might have. There is every reason to believe that this omission was deliberate.

The legislative history clearly demonstrates that the legislature did not intend the enactment of § 20-327b to eliminate existing obligations of a vendor under Connecticut law. Senator DeLuca explained that "in no shape or manner does [the bill] relieve [vendors] of any of their current responsibilities. They still must provide any information that they are aware of to the prospective buyer. And if they are found not to, they can lose their license or be sued." 38 S. Proc., Pt. 9, 1995 Sess., p. 3134. He further explained that the statute "basically . . . obligates the seller to provide written information when selling . . . a property to a prospective buyer . . . . And it would not in any way make Realtors relinquish their responsibility. They would still be responsible." 38 S. Proc., Pt. 16, 1995 Sess., p. 5892. Similarly, Representative Eberle stated that the statute "makes clear that the report does not release brokers of any disclosure obligations they currently have under existing law." 38 H.R. Proc., supra, p. 6966.

We are persuaded, therefore, that § 20-327b does not preclude existing common-law actions for misrepresentations made by a vendor regarding the condition of residential property.[8] Accordingly, the court was not authorized by § 20-327b to render judgment for the plaintiff for negligent misrepresentation.

C

We finally turn to the critical question in this case. Is the court's conclusion that the defendant was liable to the plaintiff for negligently misrepresenting the condition of the house legally correct and supported by the record? We conclude that the court's judgment is not supported by the record.

---

[8] The defendant has not argued that, if her statement on the § 20-327b report was a negligent misrepresentation, that it is not actionable as such because it was made as part of her completion of the form itself.

To assess the propriety of the court's judgment, we must turn first to the nature of the common-law duty owed to the plaintiff by the defendant as a vendor of residential property. The existence of a legal duty is a question of law for the court that is subject to our plenary review on appeal. *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 138, 811 A.2d 687 (2002).

Our Supreme Court "has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Citations omitted; emphasis added; internal quotation marks omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 217–18, 520 A.2d 217 (1987); *Parker* v. *Shaker Real Estate, Inc.*, 47 Conn. App. 489, 494–95, 705 A.2d 210 (1998). A vendor of residential property is liable to a purchaser for a negligent misrepresentation of the condition of the property to that purchaser if the purchaser would not otherwise have agreed to the terms of the sale. See *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 347, 232 A.2d 307 (1967); *Warman* v. *Delaney*, 148 Conn. 469, 473–74, 172 A.2d 188 (1961); *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 721–22, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).

Accordingly, an action for negligent misrepresentation requires a plaintiff to prove that (1) the defendant made a misrepresentation and (2) the plaintiff reasonably relied upon that misrepresentation. See *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 273–75, 721 A.2d 1197 (1998); see also *Maturo* v. *Gerard*, 196 Conn. 584, 589, 494 A.2d 1199 (1985). "Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact." (Internal quotation marks omitted.) *Mips* v. *Becon, Inc.*, 70 Conn. App. 556, 558, 799 A.2d 1093 (2002).

The court, therefore, as it did, properly could have accepted Bode's testimony as evidence that the defendant should have known that the house was infested with ants. It did not, however, make an explicit finding as to reliance. Nevertheless, we can infer from the court's conclusion that it implicitly found for the plaintiff on the issue of reliance when it concluded that the defendant was negligent. Because we find that the court's application of the law was legally and logically correct, we must determine whether its findings of fact were clearly erroneous. We conclude that the court's implied factual findings did not meet this test.

It is undisputed that the plaintiff hired an independent professional to inspect the dwelling. The inspection did not uncover any infestation. Moreover, the plaintiff testified that the inspection lasted for only one hour and twenty minutes and that the inspector told him that he was in a rush. It is also undisputed that the plaintiff did not initially want to obtain a professional inspection and that the defendant urged him to do so. Under these circumstances, it is difficult for us to conclude that the record evinces sufficient facts establishing the plaintiff's reliance on the defendant.

Section 20-327b reinforces our conclusion. The statute emphasizes the significance of an independent pro-

fessional inspection by urging a purchaser to hire a professional to inspect the property despite the representations made on a § 20-327b report. General Statutes §§ 20-327b (d) (2) (B) and 20-327d. Concededly, both parties signed the § 20-327b report containing such a recommendation.

We may invoke § 20-327b even though it does not govern common-law misrepresentation because it is reasonable to conclude that the legislature's statement of policy has carryover relevance to the common law. We presume that the legislature enacts legislation that "renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . [and that] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citation omitted.) *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993). Under suitable circumstances, our Supreme Court has relied on statutory policy to inform common-law adjudication. Id., 514; see also *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983). This is another such circumstance.

The relationship between the policy of § 20-327b and the common law of negligent misrepresentation persuades us that, in the absence of any other evidence of actual reliance by the plaintiff, he cannot prevail in his negligent misrepresentation claim. Indeed, the plaintiff's claim that he relied on the defendant's statements is further attenuated by the undisputed fact that the defendant advised him not to do so.

We conclude, therefore, that the findings of fact supporting the court's judgment for the plaintiff were insufficient to support the judgment. Specifically, the record does not reveal any evidence that the plaintiff, despite the professional inspection, was justified in relying on

the statements the defendant made on the § 20-327b report.[9]

The judgment is reversed with respect to count seven of the plaintiff's amended complaint and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

---

[9] We decline to remand this case for a further articulation of the trial court's factual findings pursuant to Practice Book § 60-5. *DiLieto* v. *Better Homes Insulaton Co.*, 16 Conn. App. 100, 104, 546 A.2d 957 (1988). The plaintiff introduced no evidence whatsoever about the effect of the inspector's report on his alleged reliance on the defendant's misrepresentation. The court's omission in this case, therefore, did not concern a subsidiary finding of fact. Rather, the court failed to address a necessary condition of law, namely the reasonableness of the plaintiffs' reliance on the defendant's alleged misrepresentation.