SAVINGS BANK OF MANCHESTER *v.* RALION
FINANCIAL SERVICES, INC.
(AC 25612)

Flynn, Bishop and DiPentima, Js.

Argued March 22—officially released September 20, 2005

*Stephen R. Sugrue,* for the appellant (defendant).

*Tani E. Sapirstein,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Ralion Financial Services, Inc., appeals from the judgment of the trial court ren-

dered in favor of the plaintiff, The Savings Bank of Manchester, after a trial to the court. On appeal, the defendant claims that the court incorrectly found that the plaintiff met its burden of proving by a preponderance of the evidence its claim of negligent misrepresentation. We reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The dispute between the parties concerns a lease agreement among the plaintiff, a banking institution, the defendant, a leasing company, and a third party lessee. The plaintiff and the defendant have participated in several leasing transactions both before and after this transaction, and the nature of the transaction in dispute was typical of the other business dealings between the parties involving the financing of lease agreements.

In February, 2002, International Business Counsel Corporation (IBCC) contacted the defendant seeking to lease office furniture and equipment. The defendant forwarded the communication to the plaintiff along with financial statements that IBCC had provided to it. The plaintiff knew that IBCC was a new customer for the defendant, and the plaintiff procured a financial risk analysis of IBCC from Dun & Bradstreet, Inc. On the basis of the financial statements provided by IBCC and the Dun & Bradstreet report, the plaintiff decided to finance the lease of equipment by IBCC from the defendant.

Over the next several days, the parties executed a number of agreements, which were all dated February 15, 2002. The defendant and IBCC executed a lease agreement for the equipment. The defendant executed an assignment, assumption and indemnity agreement (assignment agreement) with the plaintiff, in which it assigned to the plaintiff its rights under the lease. The defendant also provided the plaintiff with a promissory

note and a security agreement. The promissory note was a "nonrecourse" note, under which the parties agreed that the plaintiff could not seek recourse from the defendant in the event of a default, but instead could look only to the equipment as collateral for recovery. The equipment was delivered during the next several weeks, and the plaintiff released the funds for payment only after it had received notice that the equipment had been delivered to IBCC. IBCC defaulted almost immediately after delivery.

The plaintiff filed a complaint against the defendant on August 29, 2002, alleging, inter alia, negligent misrepresentation. In the complaint, the plaintiff alleged that the defendant represented that "the Lease had been duly executed and delivered and was in full force and effect," and that "the equipment leased to IBCC by [the defendant] was located at the places designated therefor in the Lease." The plaintiff further contended that those representations were false because "IBCC was not organized as a corporation and said Lease was not in full force and effect, and the equipment was not located at the places designated therefor in the Lease." The plaintiff also alleged that it relied on those representations in entering into the assignment agreement.

After a trial to the court, the court issued a memorandum of decision on June 22, 2004, finding the defendant liable for negligent misrepresentation. In its opinion, the court attributed two representations to the defendant. The court found: "At no time did [the defendant] determine whether IBCC was organized as a corporation or was an existing legal entity. But it did represent to the [plaintiff] that it had a client ready to do business." The court also found that the lease provided by the defendant to the plaintiff stated that the leased equipment was located at the places designated in the lease. On the basis of those findings, the court concluded that the defendant was liable for negligent misrepresenta-

tion, stating that the defendant had "made representations to the [plaintiff] and failed to exercise reasonable care to determine the accuracy of those representations." The court awarded the plaintiff $113,821.44 in damages. This appeal followed.

On appeal, the defendant argues that the plaintiff did not prove the elements of negligent misrepresentation because (1) it did not prove that the representation made by the defendant regarding the corporate status of IBCC was false and (2) it did not prove that it had relied on the misrepresentation that the equipment was delivered prior to execution of the assignment agreement.

"Our standard of review of challenges to the court's findings of fact and legal conclusions is well established. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 356–57, 824 A.2d 1 (2003).

Our Supreme Court "has long recognized liability for negligent misrepresentation. [It has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement Second of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if

he fails to exercise reasonable care or competence in obtaining or communicating the information. . . . Accordingly, an action for negligent misrepresentation requires a plaintiff to prove that (1) the defendant made a misrepresentation and (2) the plaintiff reasonably relied upon that misrepresentation. . . . Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 363–64.

The defendant first claims that the court improperly found in favor of the plaintiff because the plaintiff did not prove that the defendant's representation regarding IBCC's corporate status was false.

At trial, the plaintiff claimed that it relied on the defendant's misrepresentations that IBCC was an existing entity with which it had a valid and binding lease. In its memorandum of decision, the court found that the defendant did not confirm whether the IBCC was a corporation and that doing so merely would have required a review of the records of the secretary of the state. The court made no findings, however, regarding whether IBCC was a corporation or other business entity. The parties adduced no evidence regarding IBCC's corporate status at the time of the execution of the agreements.[1] Additionally, the court did not find and, on the basis of the evidence, could not have found that the defendant made any false statements to the plaintiff regarding the corporate status of IBCC. The court's finding, which led to its conclusion that the defendant made a negligent misrepresentation, was not supported by the evidence elicited at trial and, therefore, was clearly erroneous.

---

[1] Robert Davidson, the plaintiff's loan officer, testified that he later learned that IBCC was not a corporation, but the plaintiff failed to provide any evidence at trial regarding IBCC's status at the time the agreements were executed.

The defendant next claims that the plaintiff did not rely on the representation in the assignment agreement that the equipment was at the places designated in the lease and, therefore, cannot prove its claim of negligent misrepresentation.

As indicated previously, in order to recover on a claim of negligent misrepresentation, the plaintiff must prove, inter alia, that it reasonably relied on the defendant's false representations. The defendant conceded in its brief that the statement in the assignment agreement that the equipment had been delivered was incorrect but argues that the plaintiff did not prove that it relied on that misstatement. At trial, the plaintiff did not provide any evidence regarding its reliance on the statement that the equipment had been delivered. Indeed, the record reveals that the plaintiff did not rely on the misrepresentation contained in the assignment agreement that the equipment was then on site. The defendant elicited testimony from Robert Davidson, the plaintiff's loan officer, that at the time the assignment agreement was executed, the plaintiff knew that the equipment had not been delivered to the place designated in the lease.[2] In light of this testimony, the court

[2] The following colloquy occurred during the defendant's cross-examination of Davidson:

"[The Defendant's Counsel]: "Now, if you look at the upper right hand portion of these various pages, you see referenced schedule and then a date?

"[The Witness]: Correct.

"[The Defendant's Counsel]: And what is your understanding of what those dates reflect?

"[The Witness]: The delivery dates.

"[The Defendant's Counsel]: Right. So, take your time to review, if you like, but am I correct [that] every delivery date for each invoice postdates the date of the lease?

"[The Witness]: Yes.

"[The Defendant's Counsel]: So, am I correct [that] when this lease was executed and delivered to you, you had an understanding that the equipment which is the subject of that lease had not been delivered to the lease?

"[The Witness]: Yes. But we didn't find out until we received the certificate of execution saying that the equipment had been delivered.

"[The Defendant's Counsel]: But my only question is, as to the belief and understanding at the time the lease was executed, did you know that none of the equipment had then been delivered?

could not have found that the plaintiff relied on the language in the assignment agreement. This conclusion is supported further by the additional testimony of Davidson that the plaintiff did not remit payment until the goods were delivered to IBCC during the next month. On the basis of this testimony, we conclude that the court's finding that the plaintiff relied on the misrepresentation that the equipment was delivered prior to the execution of the assignment agreement was clearly erroneous. Because the evidence does not support the conclusion that the defendant made any false representations to the plaintiff, on which the plaintiff detrimentally relied, the court's judgment cannot stand.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.

"[The Witness]: Yes. That exact date had not then been delivered.

"[The Defendant's Counsel]: Now, the assignment, assumption and indemnity agreement, which you refer to as plaintiff's exhibit one, is dated . . . contemporaneously with the lease?

"[The Witness]: Yes. February 15.

"[The Defendant's Counsel]: It was a one shot transaction in terms of when all the documents were signed. Is that correct?

"[The Witness]: Correct.

"[The Defendant's Counsel]: So, documentation was signed, was the lease agreement—isn't it correct that the lease had been duly executed and delivered at the time the assignment document was given?

"[The Witness]: Well, it was signing off prior to presenting it to IBCC.

"[The Defendant's Counsel]: And this had been delivered to you?

"[The Witness]: Yes."