JOHNNYCAKE MOUNTAIN ASSOCIATES *v.* LANA M. OCHS ET AL.
(AC 27440)

DiPentima, Gruendel and Berdon, Js.

Argued May 29—officially released October 9, 2007

Richard P. Weinstein, with whom was Nathan A. Schatz, for the appellants-appellees (defendants).

Derek V. Oatis, for the appellee-appellant (substitute plaintiff Linda M. Michalek).

Opinion

BERDON, J. The defendants, Lana M. Ochs and Joseph J. Ochs, brought this appeal from the trial court's judgment of foreclosure on real property located at 206 Johnnycake Mountain Road in Burlington. The defendants claim that the court (1) improperly concluded that the substitute plaintiff, Linda M. Michalek,[1] did not negligently misrepresent that the property could be used for commercial purposes without additional permits, (2) improperly applied the law of equitable estoppel, (3) abused its discretion by failing to order the remedy of rescission and (4) abused its discretion in fashioning an equitable remedy.

The plaintiff, who sold the property to the defendants and took back a purchase money mortgage on part of the property, claims on cross appeal that the court improperly found that she had made a negligent misrepresentation by failing to give full disclosure of a zoning violation on the premises. We affirm the judgment of foreclosure and, on the plaintiff's cross appeal, reverse the judgment of the trial court.

[1] The note and mortgage were assigned to Johnnycake Mountain Associates, the party that commenced this foreclosure action. During the pendency of this case, the note and mortgage were assigned back to Michalek, and Michalek was substituted for Johnnycake Mountain Associates as the plaintiff in this action. Unless otherwise noted, all references to the plaintiff refer to Michalek.

The following facts and procedural history inform our decision. The plaintiff was the owner of two adjoining pieces of property at 198 Johnnycake Mountain Road (house lot) and 206 Johnnycake Mountain Road (barn lot) in Burlington (town).[2] The plaintiff had used the properties for approximately nine years for the purpose of training and housing horses (both her own and others') and giving riding lessons. At the time of sale, the barn lot consisted of approximately eleven acres with several structures, including a barn with stalls for fourteen horses and indoor and outdoor riding areas. The adjoining parcel, the house lot, consisted of a residence on approximately six acres.

Some of the structures on the barn lot were situated within 100 feet of the boundary line between the lots. The town's zoning regulations prohibit construction of buildings for the purpose of housing livestock within 100 feet of a boundary line. When issuing building permits for these structures between August, 1999, and September, 2001, Charles Kirchofer, the zoning enforcement officer for the town, informed the plaintiff that although the structures were within 100 feet of the boundary line, it did not pose a problem because she owned the adjacent parcel. He suggested that the plaintiff could have the lot lines altered to address any potential issue that might arise if the lots were sold to two different owners. The plaintiff had a survey map drawn reflecting such changes to the lot lines, but the deeds were not altered. Prior to closing on the sale of the properties, the plaintiff informed the defendants of this potential issue with the setback requirement, but she did not disclose the remedies Kirchofer had suggested or the existence of the map she had commissioned.

No certificates of occupancy or special use permits were ever issued for any structures on the barn lot. As

[2] The barn lot is the only property subject to foreclosure in this action.

of the time of trial, the town had no record of zoning noncompliance complaints being filed against the property, and it had not issued notices of violation or any cease and desist orders regarding the structures on or use of the property.

Subsequently, the plaintiff sold both parcels to the defendants. The defendants, who lived approximately one mile from the properties, made numerous visits to the site and held meetings with the plaintiff prior to the sale. The parties originally executed one contract for the sale of both parcels, but later, in order to accommodate the defendants,[3] restructured the transaction so that there were separate contracts for the sale of each lot. In so doing, the overall purchase price was divided between the parcels on the basis of considerations other than the respective value of each parcel. The defendants purchased the barn lot, the subject of this action, on January 31, 2003, for $430,000.[4] The plaintiff provided financing for the transfer in the form of a purchase money mortgage in the amount of $350,000. At the closing, the defendants executed a note that called for six monthly payments of $2098.43, followed by a final balloon payment of $349,622.51.

Following the closing, the defendants continued to use the property as a horse farm with the plaintiff's assistance. Sometime thereafter, a dispute arose between the parties that caused the plaintiff to remove her horses and to discontinue her assistance. After June, 2003, the defendants elected to stop making mortgage

[3] The court found that this division of contracts and price was done to accommodate the defendants' desire to allocate a sufficient portion of the purchase price to the barn lot to facilitate the securing of financing for the purchase of that lot and to assist the plaintiff in expediting the purchase of another property.

[4] On the same date, the defendants also purchased the house lot from the plaintiff. The purchase price was $615,000, and financing for the purchase was through a commercial lender.

payments to the plaintiff. The defendants informed the plaintiff that they ceased making payments because, prior to purchase, the plaintiff had failed to disclose to them the zoning violations.[5] In November, 2003, the defendants stopped using the property for housing and training horses belonging to others because they believed that the location of the structures constituted a zoning violation, although they continued to house their own horses on the property.

The plaintiff brought this action for foreclosure on the barn lot on November 10, 2003. In response, the defendants raised affirmative defenses. The court rendered judgment of foreclosure but made an equitable reduction in the debt owed on the mortgage note in order to bring the barn lot into compliance with the zoning regulations[6] on the basis of its finding in favor of the defendants on their special defense that the plaintiff had made a negligent misrepresentation as to the zoning setback violation. The court denied the defendants' request for the remedy of rescission with respect to the note and mortgage. The court rendered judgment of strict foreclosure, finding the debt to be $305,594.03 after reducing it by $113,611.12, as a result of the claimed negligent misrepresentation.[7] The court also

---

[5] Notwithstanding the defendants' claim, the court found that the plaintiff disclosed the setback issue prior to sale of the property. The defendants point out, however, that she failed to disclose the remedy suggested by Kirchofer and the existence of the survey map she had commissioned.

[6] See footnote 7.

[7] The mortgage debt claimed due as of August 28, 2005, was $411,383.86. The court reduced the debt by $113,611.12 upon its finding that the $17,481.12 late fee on the balloon payment was unenforceable and that the defendants were entitled to credits of $15,000 to remove the riding arena and $81,130 to relocate the barn in order to comply with the 100 foot setback required by zoning regulations, leaving a total due of $297,772.74. With respect to the plaintiff's claim for attorney's fees pursuant to the note and court costs, the court ordered that they "shall be the subject of a further hearing by the court at which time it will also accept evidence as to costs incurred by the plaintiff customary to a foreclosure action." At a hearing on February 14, 2006, the court modified the per diem to $48.91, finding the total debt amount to be $305,594.03 as of that date. The court also awarded the plaintiff

found the fair market value of the barn lot to be $230,000. The defendants filed this appeal from the judgment of strict foreclosure, and the plaintiff filed a cross appeal.

I

Both parties claim that the court ruled improperly on the special defense of negligent misrepresentation. The defendants claim that the court improperly concluded that the plaintiff did not negligently misrepresent that the property could be used as a working horse farm *without additional permits*. On cross appeal, the plaintiff claims that the court improperly concluded that the plaintiff's description of a zoning setback violation on the premises was a negligent misrepresentation because it was incomplete.

"Our standard of review of challenges to the court's findings of fact and legal conclusions is well established. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Savings Bank of Manchester* v. *Ralion Financial Services, Inc.*, 91 Conn. App. 386, 389, 881 A.2d 1035 (2005).

To assess the propriety of the court's judgment, we must turn first to the nature of the common-law duty owed to the defendants by the plaintiff. See *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 363, 824 A.2d 1 (2003). "The existence of a legal duty is a question

reasonable attorney's fees of $47,500 and other expenses, noting "the voluminous pleadings that were involved in this file . . . including extensive posttrial briefs and motions."

of law for the court that is subject to our plenary review on appeal." Id.

Our Supreme Court "has long recognized liability for negligent misrepresentation. [The court has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles are set forth in similar terms in § 552 of the Restatement (Second) of Torts [1977]: One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Citations omitted; internal quotation marks omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 217–18, 520 A.2d 217 (1987); see also *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 575–76, 657 A.2d 212 (1995).

Accordingly, to establish the claim of negligent misrepresentation as a defense in this foreclosure action, the defendants had to establish "(1) that the [plaintiff] made a misrepresentation of fact (2) that the [plaintiff] knew or should have known was false, and (3) that the [defendants] reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006). "Since the rule of liability . . . is based upon negligence, the [plaintiff] is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information." 3 Restatement (Second) Torts § 552, comment (e), p. 130 (1977). "Whether evidence supports a claim of . . . negligent misrepresentation is a question of fact." (Internal quotation

marks omitted.) *Savings Bank of Manchester* v. *Ralion Financial Services, Inc.*, supra, 91 Conn. App. 390. As such we will review the findings of the court as to negligent misrepresentation and reverse the judgment as to that claim only if the findings are clearly erroneous. See id.

A

The defendants claim that the court improperly found that the plaintiff did not negligently misrepresent that the property could be used for commercial farming purposes. Specifically, the defendants claim that the plaintiff represented that the intended use of the premises as a working horse farm was permitted under Burlington's zoning regulations, but, in fact, such use requires a special permit that was not obtained. The defendants also claim that the lack of a certificate of occupancy precludes use of structures on the premises as a working horse farm. The defendants are not entitled to relief from foreclosure on that ground because, even if such permits are necessary,[8] the plaintiff had a reasonable, good faith belief that the defendants' intended use of the premises was not in violation of any zoning regulations and did not require any additional permits.

The defendants claim that operation of a horse farm on the premises is controlled by § IV.A.4.n of the Burlington zoning regulations,[9] which requires a special permit for "[c]ommercial recreation uses that promote the

[8] The defendants argue that the court improperly found that the property could be used for commercial farming purposes. Whether the property could be used for commercial farming purposes is irrelevant to the issues raised in these appeals.

[9] Section IV.A.4 of the Burlington zoning regulations provides in relevant part: "The following uses, or additions thereto, may be granted by the Commission, subject to the satisfaction of requirements and standards as set forth in Section VIII. and the imposition of conditions in harmony with the general purposes of these Regulations . . . n. Commercial recreation uses that promote the retention of open space such as . . . riding academies and stables."

retention of open spaces such as . . . riding academies and stables." The plaintiff never obtained or applied for a special permit, nor was there any claim that she represented that she had such a permit. The defendants claim, however, that the absence of such a permit precludes use of the premises for the intended purpose as a horse farm, and the plaintiff's failure to inform the defendants of this problem constituted a misrepresentation on which they relied in purchasing the property and executing the mortgage note.

An equally reasonable interpretation of the regulations is that use of the premises as a horse farm is controlled by § III.D.2,[10] which allows farm uses on residential property. The plaintiff testified that she was unaware of the need for any special permits. The testimony of Kirchofer, the zoning enforcement officer, is consistent with this interpretation. He was familiar with the plaintiff's use of the premises, but he never raised the issue of the requirement of a special permit for the purposes that the plaintiff used the premises.[11]

The defendants claim that an additional impediment to their use of the property as a horse farm is that no certificates of occupancy were issued for the barn and indoor riding ring on the premises. Section X.B.4.a of the Burlington zoning regulations prohibits occupancy or use of any structure without a certificate of occupancy.[12] The court found that certificates of occupancy

[10] Section III.D.2 of the Burlington zoning regulations provides, under the heading "Uses Permitted in Any Zone": "Farming provided that buildings for the purpose of growing plants, housing livestock, or housing more than 20 poultry shall be located at least 100 feet from any street or lot line."

[11] The defendants ceased boarding others' horses approximately ten months after purchasing the premises in apparent reliance on their interpretation of the special use permit provisions discussed previously.

[12] Section X.B.4.a of the Burlington zoning regulations provides in relevant part: "No building or structure or any addition or alteration thereto hereafter erected shall be occupied or used, in whole or in part, for any purpose until a Certificate of Occupancy shall have been issued by the Building Official."

are necessary for the use of the structures on the premises. Nonetheless, no evidence was presented that the plaintiff was issued notice of noncompliance or that any action was taken by the town zoning commission. Furthermore, the defendants continued to house their own horses in the barn through the time of trial without any indication that such activity was prohibited.

In articulating its decision, the court stated that "[b]ased on the statements and actions of the zoning enforcement officer, the plaintiff had a good faith belief that she was not in violation of any regulations so long as the usage and configuration of the property retained the status quo." To the extent that any representations were false, the plaintiff had reasonable grounds on which to believe that the zoning regulations would not inhibit the operation of the premises as a working horse farm. The zoning enforcement official issued building permits and was aware of the uses of the premises but never gave any indication that the plaintiff was not in compliance with regulations. No action was taken by the zoning commission despite its enforcement officer's knowledge of the farming activities being conducted on the premises. The court had ample evidence from which to conclude that the plaintiff reasonably represented the premises as a working horse farm. We hold that the court's conclusion that it was not negligent for the plaintiff implicitly to represent that no additional permits were necessary is not clearly erroneous.

### B

On cross appeal, the plaintiff claims that the court improperly found that she negligently misrepresented, by omission, the nature of the zoning setback violations of structures on the premises.[13] We agree.

---

[13] In addressing this issue, the court noted that claims of innocent misrepresentation are also actionable and stated that "[w]hether the representations are characterized as negligent or innocent, the defendants have established by a preponderance of the evidence the elements of this special defense." We treat this claim and the claim discussed in part I A as claims for negligent

The court found that the plaintiff orally disclosed to the defendants prior to the closing that there was a potential zoning violation because the barn on the barn lot was too close to the lot line. The court further found that the plaintiff had discussed the setback issue with Kirchofer, the zoning enforcement officer. He informed the plaintiff that although the barn was too close to the lot line, he did not consider this a violation because the adjoining lot was also owned by the plaintiff, but cautioned that if the lots were sold to two different purchasers, it could present a zoning violation.[14] Kirchofer suggested that the plaintiff could have a survey done to change the location of the lot lines or combine the properties into one to address any potential issue that might exist regarding the location of the structures

misrepresentation. To the extent that the court ruled on innocent misrepresentation, we hold that the defendants are not entitled to relief on that ground. "An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 346, 232 A.2d 307 (1967). The plaintiff had no duty to speculate as to potential applications of zoning regulations beyond her reasonable belief in the truth of the zoning official's statements that the location of the structures was not a violation unless the properties were sold to two different purchasers.

[14] The Burlington zoning regulations require that buildings used to house livestock must be at least 100 feet from any lot line. Burlington Zoning Regs., § III.D.2; see footnote 10. It is undisputed that the barn on the barn lot was within 100 feet of the house lot.

The plaintiff reasonably understood the regulation to be inapplicable to the structures on the barn lot. The doctrine of merger supports her interpretation. Merger of adjacent lots so that two individual lots may be treated as a single lot for purposes of applying zoning regulations may occur where "in the absence of a merger provision where the parties intend to treat multiple lots as a single lot . . . [t]he owner's intent under the common law to merge lots is inferred from the owner's conduct with respect to the land and the use made of it. In order to have a merger of adjacent lots they must be under common ownership . . . . Merger may occur as a result of the physical acts of the property owner which show intent to abandon the separate status of two nonconforming lots, such as . . . using the two lots together as one lot." R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 53.6, pp. 246–49, citing *Marino* v. *Zoning Board of Appeals*, 22 Conn. App. 606, 578 A.2d 165, cert. denied, 216 Conn. 817, 580 A.2d 58 (1990).

relative to the lot line. The court found that the plaintiff should have disclosed the full extent of the discussions she had with the zoning enforcement officer. On the basis of these findings, the court found that the defendants were induced to execute the note and mortgage through the plaintiff's failure to disclose that the potential zoning problem in the underlying real estate would frustrate the intended use of the premises as a working horse farm.

Liability for negligent misrepresentation may be placed on an individual when there has been "a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak. . . . Such a duty is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak must make full and fair disclosure as to the matters about which he assumes to speak." (Citations omitted; internal quotation marks omitted.) *Duksa* v. *Middletown*, 173 Conn. 124, 127, 376 A.2d 1099 (1977).

The plaintiff's failure to disclose her discussions with the zoning enforcement officer about possible remedies for a potential zoning compliance problem was not a misrepresentation by omission because she fully disclosed the potential problem. The plaintiff's reasonable understanding of her conversation with Kirchofer led her to believe that no zoning violation would occur unless the two lots were sold to different owners. She communicated this fact to the defendants. The plaintiff had no knowledge that the location of the barn would impact the defendants, who were purchasing both properties. Therefore, it was unnecessary to further disclose the discussion with Kirchofer because the remedies discussed, to the plaintiff's knowledge, did not need to be implemented by the defendants.

Further, it was not shown that the defendants suffered any detriment from reliance on the plaintiff's representations. No action has been taken by the Burlington zoning commission as to setback violations. Therefore there has been no detriment to the defendants. They are able to use the premises as a working horse farm, as represented by the plaintiff. The lack of enforcement or other action by the zoning commission is consistent with Kirchofer's testimony that the location of the barn is not a violation because the defendants own both lots. It is also consistent with the plaintiff's representation to the defendants that no violation would occur unless the lots were sold to two different parties.

This case differs substantially from *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996), in which the seller of property represented to the buyer that the number of acres being sold was sufficient to allow the operation of a nursing home. It was subsequently discovered that the acres sold were insufficient to allow the operation of a nursing home, and on the basis of that representation, the trial court upheld the jury verdict finding negligent misrepresentation. Id., 721–22. In *Foley*, "[t]he misrepresentation was not that a 3.74 acre parcel would meet zoning regulations, but that [the seller] would sell enough land for the operation of a nursing home." Id., 722. Here, the plaintiff represented that the premises could be used as a working horse farm. The defendants have not shown that it cannot be used as a working horse farm. We conclude that the court's finding of negligent misrepresentation by the plaintiff is clearly erroneous.[15]

[15] The defendants claim that the court abused its discretion in fashioning an equitable reduction in the amount owed on the note. The court based its equitable determinations on its finding that the plaintiff had negligently misrepresented the nature of the zoning setback violation. Because we reverse the judgment of the court as to negligent misrepresentation, we need not address the claims as to the court's equitable determinations. For

## II

The defendants claim that the court improperly found that the plaintiff should not be equitably estopped from enforcing the note and mortgage.[16] We disagree.

"It is well established that a foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Although we make every reasonable presumption in favor of the trial court's action in determining whether the trial court abused its discretion, [s]uch discretion . . . should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 120, 629 A.2d 410 (1993).

The doctrine of equitable estoppel is well established. "[W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a different state of things as existing at the time." *Cowles* v. *Bacon*, 21 Conn. 451, 467 (1852). "Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party

---

the same reason, we do not address the defendants' claims that the court improperly did not allow evidence regarding the defendants' claim of rescission damages.

[16] The defendants argue that the court improperly applied the law of equitable estoppel by requiring proof that the plaintiff intended to mislead the defendants. We need not address this argument because the court found "that equitable estoppel would remain an inappropriate remedy in this matter" even if the element of intent is not required.

must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other." (Internal quotation marks omitted.) *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 838, 798 A.2d 445 (2002). "Broadly speaking, the essential elements of an equitable estoppel . . . as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." 28 Am. Jur. 2d 640, Estoppel and Waiver § 35 (1966).

The defendants, as discussed more fully in part I, have failed to show that the plaintiff made any false or misleading representations. Furthermore, they have not subsequently asserted the facts to be contrary to the plaintiff's original representation that the premises can be used as a working horse farm. Accordingly, the court did not abuse its discretion in concluding that equitable estoppel was an inappropriate remedy in this matter.

On the defendant's appeal, the judgment is affirmed. On the plaintiff's cross appeal, the judgment is reversed only as to the finding of negligent misrepresentation and the case is remanded for recalculation of the debt due on the mortgage note including interest, late fees and attorney's fees consistent with this opinion.

In this opinion the other judges concurred.